# THOMPSON-STARRETT COMPANY *v.* SOUTHERN BUILDING CORPORATION.

---

# SOUTHERN BUILDING CORPORATION *v.* THOMP-SON-STARRETT COMPANY.

---

BUILDING CONTRACTS; DAMAGES.

1. That a building contract might, under certain conditions of cost, have permitted the contractor, without loss to himself, to delay the completion of the building, to the loss of the owner, and therefore have been an unwise one for the owner to enter into, cannot affect its construction.

2. Delay in completing a building beyond the date fixed by the building contract, which required the work to be done at cost plus a specified profit, the aggregate in no case to exceed a guaranteed maximum amount, does not entitle the owner to recover for delay in the completion of the building, under a further provision of the contract that the owner shall have the right to deduct from the guaranteed maximum amount, $100 for each and every day that the completion should be delayed beyond the date fixed therefor, where the actual cost, plus the stipulated profit and forfeiture for the delay, is less than the guaranteed maximum amount.

3. No damages for delay in completing a building contract can be recovered independently of the damages stipulated therefor in the contract.

Nos. 2544, 2545.   Submitted May 7, 1913.   Decided May 26, 1913.

HEARING on appeals (specially allowed) by the plaintiff and the defendant from an order of the Supreme Court of the District of Columbia, sustaining defendant's demurrer to the first two counts, and overruling defendant's demurrer to the third count of the declaration in an action brought to recover damages for breach of a building contract. *Reversed* in 2544. *Affirmed* in 2545.

The COURT in the opinion stated the facts as follows:

These are special appeals allowed the plaintiff and defendant, respectively, in an action brought by the Southern Building Corporation against the Thompson-Starrett Company, both of which are corporations; the former is hereafter called owner and the latter contractor. The foundation of the action is a building contract, entered into by the said parties, March 23, 1910. The contractor agreed, under the direction of the owner's architect, to provide all the material and perform all the work necessary to complete a building for the owner in the city of Washington, in accordance with certain plans and specifications attached to the contract. The following items are extracted:

"2. The contractor guaranteed to deliver the aforesaid work for a sum not to exceed eight hundred and fifty thousand dollars ($850,000), including its profit, and agrees to charge the owner the actual cost thereof to the contractor, plus the sum of sixty thousand dollars ($60,000) for its profit.

"On the completion of the building, provided the cost of the contractor plus the amount of the profit is less than the guaranteed maximum amount, the contractor agrees to credit one hundred per cent of the difference on the guaranteed maximum amount.

"3. The contractor shall carefully supervise the construction and erection of the building, and attend to the letting of all subcontracts, the purchase of materials, and the employment of labor. If required to do so in writing by the owner, the contractor will obtain the architect's consent in writing before making any subcontracts. Written consent, when obtained, shall be final and binding.

"4. The contractor shall prosecute the work under the supervision of the architect with the utmost despatch consistent with economy and good workmanship, and guarantees to turn the building over to the owner, free from all liens or indebtedness incurred by the contractor in its construction, on or before February 1st, 1911.

"Should the contractor fail to complete the building by the date mentioned, the owner shall have the right to deduct from the guaranteed maximum amount the sum of one hundred dollars ($100) for each and every day that the completion is delayed beyond the said date. Should the contractor complete the building prior to the date mentioned, the owner agrees to increase the guaranteed maximum amount by the sum of ($5) five dollars for each and every day the building is completed prior to said date.

"Should the contractor be delayed in the prosecution or completion of the work by the act, neglect, or default of the owner or his agents, or of any other contractor employed by the owner upon the work, or by any damage caused by fire, lightning, earthquake, cyclone, or other casualty, or by strikes or lockouts, then the time herein fixed for the completion of this work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid."

Other items provide that the contractor shall indemnify the owner against all claims for damages to persons on account of negligence in carrying on the work; that the contractor shall not include in the cost of building, the services and expenses of its accounting, its contract, its estimating and cost departments; that there shall be included in the building the actual cost incurred in the preparation, inspection, delivery, and removal of materials and tools; in the superintendence of construction; the equipment and maintenance of a temporary office at the building site; liability and fire insurance, bond and all city fees. That machinery and tools are to be charged to the cost of the work at standard prices. The contractor shall remove all machinery and tools that are in good condition, when no longer required, crediting the same to the cost of the work at 85 per cent of the amount charged. The contractor agrees to furnish the owner a full statement of all moneys paid out, together with estimates of amounts required to cover work not yet let or done; and to permit the owner, at any time, to inspect its pay rolls, accounts, contracts, and books. The contractor agrees to guarantee the quality of material and workmanship,

and should any defect be discovered within a year after delivery, due to faulty work or material, to make the same good at its own expense. The owner agrees to pay the contractor the cost of the building, plus the amount of profit, at the rate of 90 per cent thereof, on the 10th day of each month; the remainder of the contract price thirty days after possession taken by the owner. There were certain addenda, relating to mortgages for building loans, issue of bonds, etc., which are of no importance in the present case.

The declaration of the owner, filed January 19, 1912, contained three counts.

Count 1 alleges the contract; that it required completion on or before February 1, 1911, that it provides in event of failure to complete said building as aforesaid, the defendant would pay to plaintiff, as liquidated damages, $100 per day for each and every day that the completion should be delayed beyond said date; that the defendant did not complete and deliver the building until October 19, 1911, whereby an action accrued to plaintiff for damages to the amount of $26,000, for which it sues, etc.

Count 2 sets out the same cause of action with more elaboration, and alleges that the said delay was not caused by the negligence or fault of the plaintiff, or by any of the excusing causes stipulated in the contract.

Count 3 alleges the failure to complete and deliver possession of the building by the specified date, that plaintiff has been deprived of possession and of the revenue it could and would have received in the interval between said date of promised completion, and the date of the actual completion, and has thereby sustained damages in the sum of $26,000. It is agreed as a fact that the actual cost of the building was $681,000. Defendant demurred to each count of the declaration. Its demurrer was sustained to counts 1 and 2, and overruled as to count 3. The conditions of the case justifying it, a special appeal was allowed to the plaintiff from so much of the order as sustained the demurrer to counts 1 and 2 and to the defendant as to count 3. Both appeals have been incorpo-

rated in one record, though separately docketed, and were heard together.

*Mr. Charles A. Douglas, Mr. Gibbs L. Baker, Mr. Thomas Ruffin,* and *Mr. Hugh H. Obear* for the Southern Building Corporation.

*Mr. A. B. Browne, Mr. C. C. Tucker, Mr. Alexander Britton,* and *Mr. Evans Browne* for the Thompson-Starrett Company.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The contract was entered into for a lawful purpose and is one that each party was competent to make. It is unlike the ordinary building contract, but its meaning is not difficult of ascertainment.

The object of the contract was that the owner should not be compelled to pay more than the actual cost of the building, plus the fixed profit of the contractor of $60,000. To protect the owner from an excessive cost, the guaranteed maximum of its payment was fixed at $850,000. Under but one condition could the owner be made to pay more than this guaranteed maximum amount; which was that, in case of completion before the date fixed therefor, for each day thereof it should be increased $5. If, however, the actual cost of the building, plus the profit, $60,000, should be less than the guaranteed maximum amount, the foregoing addition to the maximum amount should not benefit the contractor. On the other hand, it was stipulated that should the contractor fail to complete the building by the date fixed, the owner "shall have the right to deduct from the guaranteed maximum amount the sum of $100 for each and every day that the completion is delayed beyond the said date." In the ordinary building contract with liquidated damages covenant, the owner agrees to pay a fixed sum to the contractor, regardless of the actual cost, or whether there will be profit or

loss; the contractor agrees to complete and deliver possession on a .day named; and aware that the owner may sustain loss through default in completion, he stipulates for a certain sum per day in liquidation of the owner's damages.

By the terms of the present contract actual cost of construction and a reasonable profit thereon were contemplated. Under no circumstances could the contractor receive more than the actual cost of the construction, plus its profit of $60,000. Had it completed the building on the day named at the actual cost of $850,000, it could have received no profit; and for every day that completion was delayed thereafter the owner could deduct $100, thus causing the contractor an actual loss of $26,000. So, if the building had actually cost $790,000, the contractor would be entitled to his profit also, subject to diminution, however, to the extent of $100 per day for every day of delay. There can be no doubt what this guaranteed maximum amount was, and of its controlling effect upon the so-called liquidated damage stipulation. It is agreed that the actual cost of the completed building was $681,000; adding to this the stipulated profit of $60,000, the aggregate is $741,000. Deducting from the guaranteed maximum amount the stipulated amount for the delay, namely, $26,000, the whole amount of the payment was $83,000, less the guaranteed maximum amount. This sum of $741,000 the contractor was entitled to receive notwithstanding the delay. That the contract might, under certain conditions of cost, have permitted the contractor, without loss to itself, to delay the completion, to the loss of the owner, and therefore have been an unwise one for the owner to enter into, cannot affect its construction. It was competent to contract; no imposition was practised upon it to induce its execution; and it must abide by its terms. There was no error in sustaining the defendant's demurrer to the first two counts.

2. Plaintiff's declaration, while founded upon the contract sets up two substantially independent grounds of recovery. In counts 1 and 2 the claim of damages is founded upon the covenant of the contract stipulating the damages for delay in construction. The third count, reciting the promised date of com-

pletion, alleges and claims damages for the breach thereof independently of the aforesaid covenant. The contract is an entirety and governs the relations, rights, and liabilities of the owner and the contractor. The consequences of delay in construction after the date fixed for completion were expressly provided for therein, and excluded any other measure of damages. As no damages could be recovered under the provisions of the contract, none can be recovered independently of it. The demurrer to the third count should have been sustained.

The order appealed from in No. 2545, sustaining the demurrer to the first and second counts, is affirmed. The order appealed from in No. 2544, overruling the demurrer to the third count, is reversed. Costs are to be taxed against the Southern Building Corporation in both appeals, considered as one cause.